IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CHARLES C. HITCHENS, SR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 05-379-SLR |
| | ) |
| WASHINGTON GROUP, INT'L. | ) |
| INC., et al., | ) |
| | ) |
| Defendants. | ) |

Richard T. Wilson, Esquire, Law Office of Peter G. Angelos, Wilmington, Delaware. Counsel for Plaintiff.

Neal J. Levitsky, Esquire, and Steven K. Ludwig, Esquire, Fox Rothschild LLP, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: March 29, 2007
Wilmington, Delaware

*[signature]*
ROBINSON, Chief Judge

## I. INTRODUCTION

Charles C. Hitchens, Sr. ("plaintiff") filed the present action in Superior Court[1] for disability benefits under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, et seq. Defendants removed the case from Superior Court to the United States District Court for the District of Delaware on June 10, 2005. (D.I. 1) Plaintiff seeks recovery of short term disability ("STD") benefits from Washington Group International, Inc. ("WGI"), Washington Group International Short Term Disability Plan (the "STD Plan"), Broadspire National Services, Inc., Broadspire Services, Inc., and Broadspire Inc., administrators of the STD Plan (collectively, "defendants").[2] (Id.) Plaintiff claims that he is entitled to benefits under the STD Plan pursuant to ERISA.[3] (Id., ex. A at 4) The court has jurisdiction based on 28 U.S.C. § 1331 and 29 U.S.C. § 1132. Presently before the court is defendants' motion for summary judgment. (D.I. 13) For the reasons that follow, defendants' motion for summary judgment is granted.

---

[1] The original suit in Superior Court was docketed as Civil Action No. 05C-04-144 SCD. (D.I. 1)

[2] Broadspire is formerly known as Kemper National Services, Inc. (D.I. 1)

[3] In his complaint, plaintiff also contended that the STD Plan administrator breached a fiduciary duty. However, this court dismissed that count of plaintiff's complaint by order dated August 9, 2005. (D.I. 8)

## II. BACKGROUND

### A. Plaintiff's Employment

Plaintiff is a former employee of WGI and participated in the company's STD Plan.[4] (D.I. 1, ex. A at 1) At the time of his initial claim for disability benefits, plaintiff was a sixty year old man employed as a safety supervisor for WGI at the Motiva Enterprises oil refinery in Delaware City, Delaware. (D.I. 14, app. at WGI-0022, 0096) Plaintiff's job responsibilities included walking around the jobsite and observing work in progress.[5] (Id., app. at WGI-0021, 0096) The position required plaintiff to be among the first to respond in the event of a chemical accident to assist other employees out of the affected area. (Id., app. at WGI-0021) Plaintiff must be able to climb ladders, walk up and down steps, and lift and carry weights in excess of fifty pounds. (Id., app. at WGI-0022, 0029, 0096) Some of the areas that plaintiff monitored "could have welding fumes and industrial dusts at negligible levels," thus, at times, plaintiff wore a respirator while working. (D.I. 14, app. at WGI-0096, 0021) WGI classifies the position of safety supervisor as one requiring medium to heavy work. (Id., app. at WGI-0022)

### B. WGI's Disability Insurance Policy

WGI issued a Handbook for Salaried Employees (the "Handbook"), which included information concerning the STD Plan. (D.I. 16, app. at WGI-0470-73) WGI is

---

[4] Plaintiff was hired by WGI's predecessor in interest in 1991 and continued in WGI's employ until he was discharged on August 15, 2003. (D.I. 1, ex. A at 3)

[5] WGI did not provide a job description for plaintiff's specific position. Since WGI only provided a description of the generic position of "Technician," the job characteristics referenced herein were extrapolated from the claim records and from a more specific job description given by plaintiff's supervisor, Thomas Koval. (D.I. 14, app. at WGI-0092, 0096)

2

listed as the Plan Administrator for all plans. (Id., app. at WGI-0528) The Handbook states that

> [o]ther than for claims administration (see medical and dental plan fiduciary below),[6] the Plan Administrator has the following power and discretionary authority, in addition to all powers provided by the individual plans:
> (a) To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the plans, including the establishment of any claims procedures that may be required by applicable provisions of law;
> (b) To interpret the plans, its interpretation thereof in good faith to be final and conclusive on all persons claiming benefits under the plans, and to decide all matters arising thereunder, including the right to make determinations of fact, and construe and interpret possible ambiguities, inconsistencies, or omissions in the plans;
> (c) To decide all questions concerning the plans and the eligibility of any person to participate in the plans.

(Id., app. at WGI-0528)

The Handbook also discloses that "the Company contracts with outside experts to administer [employee] benefit plans." (Id., app. at WGI-0375) Employees are directed to contact Prudential in order to file a claim for STD benefits. (D.I. 16, app. at WGI-0407) However, for questions concerning STD coverage, claims, or account balances, employees are directed to contact the Human Resources Department at Washington Group Corporate. (Id., app. at WGI-0375) The STD Plan includes information concerning how benefits are paid, stating that "all benefits payable under the STD plan will be paid to [employees], provided [the employees] furnish acceptable proof of

---

[6]The Medical and Dental Claim Fiduciary section of the Handbook grants discretionary authority to Aetna and Blue Cross Blue Shield of Alabama. (D.I. 16, app. at WGI-0528-29)

3

disability to Prudential." (Id., app. at WGI-0473) The STD Plan was administered by Broadspire National Services (hereinafter "Broadspire").[7] (D.I. 1, ex. A at 3)

The Plan provided for the payment of STD benefits to covered employees who met its definition of disability.[8] (D.I. 16, app. at WGI-0472) The Plan defined "disabled" as follows: "[y]ou are unable to perform the material and substantial duties of your own occupation, you are not working at any job for wages or profit, and you are under the regular care of a physician." (Id.)

### C. Plaintiff's Medical Problems and Defendants' Response to Plaintiff's Claim

As part of his employment, plaintiff's ability to use a respirator was tested annually. (D.I. 16 at 2) On January 28, 2003, plaintiff was informed by a WGI nurse that he was not qualified for respirator use because he had dyspnea (shortness of breath) and high blood pressure. (Id.) At plaintiff's request, he was granted temporary clearance to continue working until there was a follow-up examination by a doctor of WGI's choosing.[9] (Id.)

---

[7] The relationships between WGI, Prudential, and Broadspire are unclear from the record. While there is no specific reference in the Handbook as to which company is the claims administrator for the STD Plan, it is apparent from the record that Broadspire served in this capacity.

[8] It is undisputed that as a full-time employee, plaintiff was insured under the Plan. (D.I. 14, app. at WGI-0001-49)

[9] Plaintiff does not point to any evidence of record in support of these assertions, but defendant did not submit a reply brief to challenge them. (D.I. 16 at 8) Viewing the facts and inferences therefrom in a light most favorable to plaintiff, the court accepts these facts as true for purposes of its summary judgment analysis.

4

On March 11, 2003, plaintiff was examined by his private pulmonologist, Dr. Marc Zubrow ("Zubrow"). (D.I. 1, ex. A at 3) Zubrow conducted a physical examination of plaintiff and did not find him to be in any distress. (D.I. 14, app. at WGI-0073) Pulmonary stress testing was conducted which revealed no respiratory limitation, but Zubrow noted that plaintiff had a significant increase in blood pressure during his exercise test. (Id., app. at WGI-0074) In addition, plaintiff underwent a CT scan which showed "absolutely no abnormalities." (Id.) Zubrow opined that plaintiff seems to be having a "significant reduction in his exercise capacity," which he believes stems from plaintiff's exposure to sulfuric acid in July 2001.[10] (Id.) Plaintiff was diagnosed with having "mild obstructive airways disease," which "will be chronic [and] possibly will continue to worsen." (D.I. 14, app. at WGI-0290, 0074) Zubrow also found that plaintiff was not qualified to wear a respirator, and advised that plaintiff be restricted from climbing, strenuous activity, and exposure to dust, fumes, vapors, and irritant gases. (Id., app. at WGI-0291) Believing the condition to be work-related, Zubrow suggested that plaintiff apply for disability benefits through his employer, WGI. (D.I. 1, ex. A at 3; D.I. 14, app. at WGI-0074)

The following day, March 12, 2003, plaintiff was physically examined by Dr. Lalitha Kambhamettu ("Kambhamettu") of Christiana Occupational Health Services.[11]

---

[10]The record indicates that "there was an explosion on [plaintiff's] job [at the refinery around July 2001] and plaintiff was exposed to chemicals, specifically sulfuric acid." (D.I. 14, app. at WGI-0007-08) Following that exposure, plaintiff had "significant burns of his upper airway and mucosal edema and buccal mucosal ulcerations." (Id. at WGI-0015) The parties did not address this incident in their briefs. (D.I. 13, 16)

[11]Kambhamettu was the doctor chosen by WGI. (D.I. 16 at 8)

5

(D.I. 16 at 2) Kambhamettu submitted a brief opinion letter regarding her evaluation of plaintiff that included the same work restrictions imposed by Zubrow, including "no use of respirator or jobs requiring it" and "no climbing heights or strenuous activity."[12] (D.I. 14, app. at WGI-0281) Kambhamettu's opinion letter does not identify how she reached this conclusion.

On or about March 13, 2003, plaintiff applied for benefits under WGI's STD Plan. (D.I. 1, ex. A at 3) As part of the claims administration process, plaintiff's medical records were sent to Dr. Peter Greaney ("Greaney"), a Broadspire physician consultant, on March 17, 2003. (D.I. 14, app. at WGI-0309-10) Greaney noted plaintiff's high blood pressure, but determined that plaintiff's chest x-ray revealed "no active disease" and "no significant abnormalities," and concluded that "no work restrictions" were necessary.[13] (Id., app. at WGI-0309) At Broadspire's request, Greaney's determination was reviewed by pulmonologist Dr. Dennis Mazal ("Mazal") on March 26, 2003. (Id., app. at WGI-0079-80) Mazal found that there was "no objective evidence for significant hypoxemia," and that there didn't seem to be any permanent damage to plaintiff's lungs resulting from his exposure to sulfuric acid fumes in 2001.[14] (Id.) Despite noting that plaintiff's

---

[12] Kambhamettu's opinion letter in the record is preceded by a two-page "Baseline Medical Questionnaire for Respiratory Clearance" in which the author notes that plaintiff has elevated blood pressure and dyspnea, yet finds that "[he] has successfully passed physical requirements and is eligible to wear a respirator." (D.I. 14, app. at WGI-0279-80) The author of this document is unclear from the record.

[13] Greaney's report does not reference the information he reviewed and considered in making his determination.

[14] Mazal reviewed the office notes from Zubrow and Kambhamettu, as well as the results of two recent PFT tests. (D.I. 14, app. at WGI-0079)

6

"pulmonary function parameters demonstrate a mild obstructive impairment," Mazal concluded that there was "no objective evidence in the medical records reviewed to support a loss of functionality that would preclude [plaintiff] from performing the essential duties of his occupation, that being a safety supervisor." (Id. at WGI-0080) Based on the reviews by Greaney and Mazal, plaintiff's claim was denied by Broadspire on March 31, 2003. (Id., app. at WGI-0054-55)

Plaintiff appealed the denial of benefits on April 4, 2003. (D.I. 1, ex. A at 3) Plaintiff's records were then reviewed by pulmonolgist Dr. Edward Klotz ("Klotz") on May 13, 2003, at the request of Broadspire.[15] (Id., app. at WGI–0081-83) Klotz noted that plaintiff's pulmonary function studies showed "mild airway obstruction with a greater degree of obstruction in the small airways." (Id., app. at WGI-0082) Klotz found that plaintiff did not have a significant reduction in oxygenation and, as such, there was "no objective reason why [plaintiff] cannot wear a respirator or climb stairs, ladders or towers." (D.I. 14, app. at WGI-0082) Based on this determination by Klotz, Broadspire again denied plaintiff's claim on May 14, 2003. (Id., app. at WGI-0031-34)

Plaintiff appealed the second denial of benefits on May 21, 2003. (D.I. 1, ex. A at 3) In June 2003, plaintiff's records were reviewed by pulmonologist Dr. Aron Neuhaus ("Neuhaus"), another peer reviewer for Broadspire. (D.I. 14, app. at WGI-0200-01) Neuhaus noted that plaintiff's only respiratory abnormality is his reduced breathing reserve. (Id., app. at WGI-0200) Neuhaus stated that there is no evidence of any oxygenation problem or abnormality in the lungs. (Id., app. at WGI-0201) He found that

---

[15]Klotz considered a number of documents, including the physicians' notes and plaintiff's test results. (D.I. 14, app. at WGI-0081)

7

plaintiff's "impairment in the pulmonary function testing is not severe enough to preclude his present occupation" and plaintiff "should be able to perform the duties of his occupation." (Id.)  Broadspire issued its Final Appeal Denial on July 10, 2003. (D.I. 1, ex. A at 3-4)  There is no dispute that plaintiff has exhausted his administrative remedies.

## III. STANDARD OF REVIEW

A court shall grant summary judgment only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving that no genuine issue of material fact exists. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 n.10 (1986).  "Facts that could alter the outcome are 'material,' and disputes are 'genuine,' if evidence exists from which a rational person could conclude that the position of the person with the burden of proof on the disputed issue is correct." Horowitz v. Fed. Kemper Life Assurance Co., 57 F.3d 300, 302 n.1 (3d Cir. 1995) (internal citations omitted).

If the moving party has demonstrated an absence of material fact, the nonmoving party then "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e)).  The court will "view the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." Pennsylvania Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).  The mere existence of some evidence in support of the nonmoving party, however, will not be sufficient for denial of a motion for summary

8

judgment; there must be enough evidence to enable a jury reasonably to find for the nonmoving party on that issue. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In other words, the court must grant summary judgment if the party responding to the motion fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. See Omnipoint Comm. Enters., L.P. v. Newtown Township, 219 F.3d 240, 242 (3d Cir. 2000) (quoting Celotex, 477 U.S. at 323).

## IV. DISCUSSION

Where a plaintiff challenges a denial of benefits under § 1132(a)(1)(B),[16] courts generally employ a de novo standard of review. Firestone Tire & Rubber Co. v. Brunch, 489 U.S. 101, 115 (1989). When the benefit plan grants the administrator or fiduciary discretion in determining eligibility for benefits, the decision is reviewed under an arbitrary and capricious standard. See Mitchell v. Eastman Kodak Co., 113 F.3d 433, 437 (3d Cir. 1997).

In the case at bar, the Handbook expressly states that WGI is the Plan Administrator for all plans and, as such, has discretionary authority to determine

---

[16]In order to be subject to liability under 29 U.S.C. § 1132(a)(1)(B), a party must be considered a fiduciary or administrator within the meaning of ERISA. Blakely v. WSMW Indus. Inc., No. Civ. A. 02-1631, 2004 WL 1739717 (D. Del. 2004). The parties do not dispute that both WGI and Broadspire may be subject to liability pursuant to § 1132(a)(1)(b).

9

eligibility for benefits. (D.I. 16, app. at WGI-0528) The Handbook also discloses that WGI contracts with outside companies to administer the benefit plans. (Id., app. at WGI-0375) While Broadspire is not specifically referenced in the Handbook, it is clear from the record that Broadspire administered the STD Plan and exercised the decision-making power with regard to plaintiff's claim for STD benefits. (Id., app. at WGI-0407, 0473; D.I. 1, ex. A at 3) As Broadspire had the final decision-making authority, this court must determine whether its decision to deny STD benefits to plaintiff is entitled to deferential treatment.

The Tenth Circuit has recently stated that,

> [o]nce a health plan administrator, the ERISA counterpart to trust law's fiduciary-trustee, has been delegated discretionary authority under the terms of the ERISA plan, nothing prevents that administrator from then delegating portions of its discretionary authority to non-fiduciary third-parties, as any similarly-situated trustee may do.

Geddes v. United Staffing Alliance Employee Medical Plan, 469 F.3d 919, 926 (10th Cir. 2006).

In order to qualify for deferential review, Firestone requires only that ERISA health plan administrators and fiduciaries reserve discretionary authority to themselves in the plan document. Id. at 925, citing Firestone, 489 U.S. at 115. Since WGI explicitly reserved discretionary authority to itself in the plan documents, its delegation of authority to a third party claims administrator does not warrant de novo review. Geddes, 469 F.3d at 926. Therefore, an arbitrary and capricious standard will apply to the court's review of Broadspire's decision to deny plaintiff's claim for STD benefits.[17] Having identified the

---

[17]Courts apply a heightened arbitrary and capricious standard of review where the administrator's decision is potentially clouded by a conflict of interest based on both

10

appropriate standard, the court next examines whether a reasonable jury could find that Broadspire acted arbitrarily and capriciously when it concluded plaintiff was not eligible for STD benefits.

Applying the deferential arbitrary and capricious standard, an administrator or fiduciary's determination must be upheld unless it was "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" Abnathya v. Hoffman-LaRoche, Inc., 2 F.3d 40, 45 (3d Cir. 1993) (citing Adamo v. Anchor Hocking Corp., 720 F.Supp. 491, 500 (W.D.Pa.1989)). The "arbitrary and capricious standard" in a context such as this is essentially the same as an "abuse of discretion standard." Nazay v. Miller, 949 F.2d 1323, 1336 (3d Cir. 1991). "This scope of review is narrow, and the court is not free to substitute its own judgment for that of the defendants in determining eligibility for plan benefits." Abnathya, 2 F.3d at 45.

Plaintiff was employed as a safety supervisor at an oil refinery, where his duties included walking the jobsite and observing work being performed. (D.I. 14, app. at WGI-0002, 0096) The position required that plaintiff be able to wear a respirator while out in the field. (Id., app. at WGI-0021) It also required plaintiff to perform physical tasks, such as climbing ladders, walking up and down steps, and carrying weights. (Id., app. at WGI-0022, 0029, 0096)

---

its funding and administration of the plan. See Pinto v. Reliance Standard Life Ins. Co., 214 F.3d 377, 390 (3d Cir. 2000). At least one court has noted that companies such as Broadspire may not be free from financial conflicts of interest because of the way it conducts business. See Davis v. Broadspire Services, Inc., No. Civ. A. 05-5829, 2006 WL 3486464 (E.D. Pa. 2006). There is no evidence in the record as to who funds the STD Plan, and the parties have not raised the issue. The court, therefore, will not address whether a heightened arbitrary and capricious standard applies.

11

The record includes two written opinions from plaintiff's examining doctors.[18] Plaintiff was examined by Zubrow on March 11, 2003. (D.I. 1, ex. A at 3) Pulmonary function testing ("PFT") was conducted which "showed no significant desaturation or respiratory limitation." (D.I. 14, app. at WGI-0074) In addition, a high resolution CT scan was performed showing "absolutely no abnormalities." (Id.) Although Zubrow found that plaintiff's physical examination was normal, he noted his concern regarding plaintiff's hypertension and the uncertainty of plaintiff's future condition. (Id.) Zubrow scheduled plaintiff for a return visit in four months in order to repeat pulmonary function testing and take another chest x-ray. (Id.)

Plaintiff was examined by Kambhamettu the following day. Kambhamettu's report is in simple checklist form, and it does not provide a great deal of insight into plaintiff's condition. (D.I. 14, app. at WGI-0281) Kambhamettu imposes the same work restrictions as Zubrow, but her report does not provide any rationale for her conclusion, nor does it cite to any objective evidence for support. (Id.) Both Zubrow and Kambhamettu opined that plaintiff was unqualifed to wear a respirator and unable to perform the physical requirements of his job. (Id. at WGI-0290-91, 0281)

During the course of plaintiff's application for benefits under WGI's STD Plan, his claim was reviewed by four physician peer reviewers of Broadspire's choosing. Mazal analyzed plaintiff's test results and concluded that they all appeared within normal

---

[18]Although plaintiff contends that he was informed by "WGI's nurse" that he was not qualified to wear a respirator due to his dyspnea and high blood pressure, the court cannot address these alleged findings, as they do not appear to be part of the record. (D.I. 16 at 2, 8)

limits.[19]  (Id. at WGI-0080)  Mazal noted that there was "no objective evidence . . . that would preclude [plaintiff] from performing the essential duties of his occupation." (D.I. 14, app. at WGI-0080)   Klotz conducted an extensive disability status determination and considered a comprehensive list of materials in reaching his conclusion which included, inter alia, plaintiff's test results and the opinions written by his examining doctors. (Id. at WGI-0081)  He noted the normal results of plaintiff's tests and also found that there was "no objective evidence in the medical records" that would qualify plaintiff for STD benefits. (Id. at WGI-0082)  The final peer reviewer to analyze plaintiff's claim was Neuhaus, who provided a detailed letter opinion regarding his conclusions of plaintiff's condition.[20]  (Id. at WGI-0200-01)  Neuhaus also found that there was nothing abnormal regarding plaintiff's test results.  He concluded that plaintiff has "a mild to moderate degree of impairment, at best," with "some decrease in [ ] breathing capacity." (D.I. 14, at WGI-0200-01)  The four physician reviewers all agreed that there was no objective evidence as to why plaintiff was unable to perform his duties as a safety supervisor.

As a matter of law, the decision to deny benefits was not "arbitrary and capricious" where this level of support is present.  See Wangerstein v. Equifax, Inc., 191 Fed. Appx. 905, 914 (11th Cir. 2006) (holding that claims administrator was not arbitrary and capricious in requiring objective evidence of disability and crediting the opinions of four peer review physicians over treating doctors); Walker-Stewart v. Federal Express Corp., No. Civ. A. 04-2187, 2005 WL 1185799, *6 (S.D. Tex. 2005) (holding it is not an

---

[19]Mazal specifically addressed plaintiff's PFT, EKG, and CT scanning results. (D.I. 14, app. at WGI-0080)

[20]Grearey also provided an opinion, but it contains less detail than the others.

abuse of discretion for an administrator to rely on conclusions of physicians who have only reviewed a claimant's medical records without conducting a physical examination of the claimant). Since there are no questions of material fact still at issue, defendants' motion for summary judgment is granted.

## V. CONCLUSION

For the reasons stated above, defendants' motion for summary judgment is granted. An appropriate order shall issue.